## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNION CONSTRUCTION WORKERS HEALTH PLAN BOARD OF TRUSTEES**, | : | Case No. 3:09-cv-00467 |
| | : | Chief Judge James G. Carr |
| Plaintiff, | : | **MOTION OF DEFENDANT KEY BANK, N.A. TO DISMISS THE** |
| vs. | : | **COMPLAINT OR IN THE ALTERNATIVE TO STAY PENDING** |
| **KEY BANK, N.A.**, *et al*., | : | **ARBITRATION** |
| Defendants. | : | (Oral Argument Requested) |

Pursuant to Federal Rule of Civil Procedure 12, Defendant Key Bank, N.A. ("Key") respectfully moves this Court to dismiss the complaint of Union Construction Workers Health Plan Board of Trustees ("Board") as to Key.  Simply put, the Complaint identifies no breach of any duty by Key; indeed, it identifies no inappropriate action or omission on Key's part in any fashion.  More fundamentally, as the directed corporate trustee for the Union Construction Workers Health Plan (the "Plan"), Key had neither a fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), nor a right under the Plan documents to question, much less direct, the investment practices of the Plan's investment manager or the Board, which is the Plan's named fiduciary. *See, e.g.*, *Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998) (affirming dismissal on the pleadings of claims against directed trustee); *Wright v. Oremet*, 360 F.3d 1090 (9th Cir. 2004) (affirming dismissal of Key as directed trustee).

In the alternative, to the extent that the Board seeks to hold Key liable for the investments made on behalf of the Plan, this Court should dismiss or stay the action pending arbitration for the reasons set forth in the separately filed motion of Victory Capital Management, Inc. ("Victory"). Accordingly, Victory's motion is incorporated by reference.

In  support  of  its  Motion,  Key  relies  on  the  attached  memorandum  and  appendices.

Defendant Key requests oral argument on its Motion.

Respectfully submitted,

/s/Jack F. Fuchs
Jack F. Fuchs (0014197)
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
(513) 352-6700 (P)
(513) 241-4771 (F)
Jack.Fuchs@ThompsonHine.com

OF COUNSEL:

Brian L. Gaj (0029439)
Robert A. West, Jr. (0078379)
Thompson Hine LLP
3900 Victory Center, 127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-0550

Eric S. Clark (0071035)
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
(513) 352-6700

**MEMORANDUM**

**I.**    **Introduction**

This Court should dismiss the Board's Complaint as to Key inasmuch as "the plaintiff's

complaint does not plead 'enough facts to state a claim to relief that is plausible on its face.'"

*Horen v. Bd. of Educ.*, 2009 U.S. Dist. LEXIS 8144, at [*4] (N.D. Ohio 2009) (Carr, C.J.)

(*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In particular, the Complaint

identifies no specific acts or omissions by Key in its capacity as the directed trustee for the Plan.

The Complaint contains only three references to Key: one in the caption, one that erroneously

2

identifies Key as a corporation (rather than as a national association), and one that alleges conclusorily that Key breached its fiduciary duties to the Plan. Complaint ¶¶ 13 & 62.  Under *Twombly*, this Court must dismiss the Complaint as to Key because the Complaint fails to identify a plausible cause of action against Key. *See*, *e.g.*, *Wright v. Oremet*, 360 F.3d 1090, 1102 (9th Cir. 2004); *In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d 1002 (S.D. Ohio 2006); *Difelice v. US Airways, Inc.*, 397 F. Supp. 2d 735, 747 (E.D. Va. 2006) (, *aff'd*, 497 F.3d 410 (4th Cir. 2007); *In re GM ERISA Litig.*, 37 Employee Benefits Cas. (BNA) 1951 (E.D. Mich. 2006). *See also Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998) (affirming judgment on the pleadings in favor of directed trustee).

More fundamentally, the Complaint's conclusory allegations against "Defendants," which fail to identify any action by Key individually, ignore that as a directed trustee, Key "had no fiduciary duty under ERISA to investigate the merits of any directives given to it by the plan's administrative committee [or by the investment manager], in part because it did not have discretion to control those aspects of the plan."  *Schornhorst v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 8781, [*18]-[*19] (E.D. Mich. 2009) (*citing Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998)). Because Key is required only to adhere to the "proper directions" of the named fiduciary, 29 U.S.C. § 1103(a)(1), Key, as a directed trustee, "cannot be held liable for following the investment instructions provided by a plan's named fiduciaries." *Wright v. Oremet*, 360 F.3d 1090, 1102 (9th Cir. 2004). Although the Complaint seeks to recover losses allegedly caused by the investment manager, where, as here, "the plan provides that an investment manager has the authority to control plan assets, then the trustee is not liable for losses caused by the investment manager." *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997). Based on

the allegations in the Complaint and the applicable law,[1] this Court must dismiss the Complaint

as to Key. *See, e.g., Wright v. Oremet*, 360 F.3d 1090, 1102 (9th Cir. 2004) (affirming dismissal

of Key as directed trustee). *See also Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998)

(affirming judgment on the pleadings in favor of directed trustee).

## II.    Standard Applicable to a Motion to Dismiss

This Court identified the following standard as applicable to a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6):

> Under Rule 12, a complaint must be dismissed if it does not plead "enough facts
> to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.
> Twombly*, 550 U.S. 544, [570,] 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).
> Plaintiff must offer "either direct or inferential allegations respecting all the
> material elements to sustain a recovery under some viable legal theory." *Scheid v.
> Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Although
> the factual allegations in a complaint need not be detailed, they must sufficiently
> "raise a right to relief above the speculative level on the assumption that all the
> allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of
> Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *Twombly*, *supra*, 127 S. Ct.
> at 1964-65.

*St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 899 (N.D. Ohio 2008) (Carr, C.J.). This Court must

treat all well-pleaded factual allegations in the Complaint as true. *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007). As this Court has noted, "[p]leading a

cause of action in federal court 'require[s] more than the bare assertion of legal conclusions.'

*Empire Home Services, L.L.C. v. Empire Iron Works, Inc.*, 2006 U.S. Dist. LEXIS 55176, 2006

WL 2269507, *4 (E.D. Mich.) (*citing Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir.1997))."

*Universal Tube & Rollform Equip. Corp. v. Youtube, Inc.*, 504 F. Supp. 2d 260, 270 (N.D. Ohio

2007). From well-pleaded allegations, this Court must "draw all reasonable inferences in favor of

the plaintiff," *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), and cannot weigh

---

[1] The allegations ignore that the Board's Investment Policy Statement authorized such investments so that no claim
for relief exists. *Laborers Nat'l Pension Fund v. Northern Trust of Quantitative Analysts, Inc.*, 173 F.3d 313 (5th
Cir. 1999).

evidence or evaluate credibility. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).[2] *See generally Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008), *cert. denied sub nom. Abrams v. Jones*, 129 S. Ct. 909 (2009). Under this standard, this Court must dismiss the Board's Complaint as to Key.

## III.   Background

### A.   The Complaint's Lack of Specific Allegations As to Key

The Complaint only references Key in the caption, paragraph 13 (misidentifying Key as a corporation rather than as a national association), and paragraph 62 ("alleg[ing] fiduciary breach against: Defendant Key bank [sic]"). Complaint. Every other paragraph of the Complaint contains allegations that: (1) do not involve Key,[3] (2) involve only Victory, the investment manager of the Plan's assets;[4] or (3) involve, without specificity, "Defendants."[5] Key is alleged to have committed no specific act or omission.

### B.   The Plan and the Board

The Plan is a multiemployer, collectively-bargained "employee welfare plan" under ERISA. Complaint ¶ 15. The Plan's assets are held in trust. *Id.* ¶ 17.

The Board is the Plan's named fiduciary. *Id.* ¶ 12. The Board also is the administrator of the Plan. *Id.* ¶¶ 18, 22. The Board is charged with the responsibility for the investment of the Plan's assets. *Id.* ¶ 19. ERISA authorizes the Board to engage an investment manager and to delegate certain investment duties to that investment manager. *Id.* ¶ 20 (*citing* 29 U.S.C. § 1102(c)).

---

[2] Under this principle, this Court cannot consider either that mortgage backed securities have long been a part of the Plan's investments or that these investments were fully disclosed to the Board.

[3] *See* Complaint ¶¶ 1-3, 8-9, 12, 17-24, 28-42, 45, 55-61, 69-70, 75,

[4] *See* Complaint ¶¶ 14, 53-54,

[5] *See* Complaint ¶¶ 4-7, 10-11, 25-27, 43-44, 46-52, 63-68, 71-74, 76-77.

### C.   The Trust Agreement Under Which Key Is the Successor Corporate Trustee

Key is the successor corporate trustee for the Plan. Complaint ¶¶ 1, 3; Agreement & Declaration of Trust (the "Trust Agreement") [Exhibit 1].[6] The Trust Agreement, which details Key's duties, provides in relevant part:

> 3.   Powers and Duties of Corporate Trustee.
>
> (a)   Forms of Investment.  **The Health and Welfare Trust Fund**, except such amounts as may be estimated by the Corporate Trustee from time to time to be required for current payments and expenses, **shall be invested and re-invested without distinction between principal and income, pursuant to the directions of the Investment Manager pursuant to Article IV hereof.**
>
> (b)   Care.  **The Corporate Trustee**, in administering the Health and Welfare Trust Fund pursuant to the directions of the Investment Manager, **shall act with the care, skill, prudence and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and of like aims, subject**, however, **to the condition that any investment made at the direction of the Investment Manager shall be regarded as having been made in accordance with standards of conduct.**
>
> (c)   Powers of Corporate Trustee.  The Corporate Trustee shall have the following powers and, in addition thereto, except as otherwise provided in this Agreement, may do all such acts, execute all such instruments, take all such proceedings, and exercise all such rights and privileges with relation to any assets constituting a part of the Health and Welfare Trust Fund, which it may in good faith deem proper to carry out the purposes of this Agreement:
>
>> (i)   **The Corporate Trustee shall have the power to do all acts necessary and proper to carry out the investment decisions of the Investment Manager** in respect to investing and reinvesting the Health and Welfare Trust Fund as provided in Article VII and to collect the income, rents, issues, profits and increase therefrom.
>>
>> (ii)   **The Corporate Trustee may hold, manage, improve, repair and control all property**, real or personal, at any

---

[6] The Trust Agreement is a Plan document referenced in Paragraph 26 of the Complaint.  This Court may consider this document without converting this motion to dismiss to one for summary judgment because it is at the heart of the Board's Complaint. *See, e.g., Weiner v. Klais & Co.* 108 F.3d 86, 89 (6th Cir. 1997); *Hecker v. Deere & Co.*, 2009 U.S. App. LEXIS 2950, at [*14]-[*18], 45 Employee Benefits Cas. (BNA) 2761 (7th Cir. Feb. 12, 2009); *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998); *Kosik v. Banc One Ins. Agency, Inc.*, 2008 U.S. Dist. LEXIS 108001, at [*7]-[*8] (N.D. Ohio 2008).

time forming a part of the trust estate and sell, convey transfer, exchange, partition, lease for any term (even though such term extends beyond the duration of this Health and Welfare Trust or commences in the future), mortgage, pledge and otherwise dispose of the same from time to time **in such manner, for such consideration, and upon such terms and conditions as are necessary and proper to carry out the investment decisions made by the Investment Manager**.

(iii)     The Corporate Trustee may vote any stock or other securities and exercise nay right appurtenant to any stock, other securities or property held hereunder, either in person or by general or limited proxy or power of attorney.

(iv)     The Corporate Trustee may borrow money with or without interest for the purposes of the Health and Welfare Trust Fund created hereunder from others.  **The Corporate Trustee may make advances of its own funds to the Health and Welfare Trust Fund, upon such terms and conditions as the Health and Welfare Plan Trustees shall approve.**  For any sums so borrowed or advanced, the Corporate Trustee may issue its promissory note as Trustee and secure the repayment thereof by pledging any securities or other property in its possession.

(v)     The Corporate Trustee is authorized and empowered to sue for, settle, collect and compound or sell claims, obligations and consideration, compensation or security for any debts, and to allow such time for payment (either with or without taking any security), and to defend, settle, adjust, compromise, pay or discharge any claim of whatever kind which may be against this Trust Fund (including, without limiting the generality of the foregoing, the claims and demands of any employee, beneficiary, retired beneficiary or contingent beneficiary) upon such terms and conditions and in such manner as it may deem fit; provided, however, that with respect to the claim of any person to a benefit hereunder, **the Corporate Trustee shall follow the written instructions of the Health and Welfare Plan Trustees.**

(vi)     The Corporate Trustee may hold securities in bearer form and may register securities held by it hereunder in its own name or in the name of a nominee without the addition of words indicating that such securities are held in a fiduciary capacity, provided, that it shall be liable for the acts of its nominee, and that the records of the Corporate Trustee shall indicate the ownership of such securities.

(vii)    The Corporate Trustee may make, execute and deliver, with or without a provision for no individual liability on its part, any and all conveyances, mortgages, powers of attorney or other instruments in writing that the Corporate Trustee may deem necessary or advisable in administering the Health and Welfare Trust Fund.

(viii)    The Corporate Trustee may employ suitable agents and counsel and pay their reasonable compensation and expenses.

(d)    <u>Duties of the Corporate Trustee</u>.  In addition to any other duties imposed upon it by the terms of this Trust Agreement, the Corporate Trustee shall have the following duties and obligations:

(i)    **The Corporate Trustee shall have the custody and care of the assets of the Health and Welfare Trust Fund and shall have the liability of a Trustee for the safekeeping of all cash and securities constituting a part of the Health and Welfare Trust Fund.**

(ii)    The Corporate Trustee shall maintain accurate and detailed records and accounts of all investments, receipts, disbursements and other transactions, acts and proceedings hereunder and shall perform all clerical, accounting work in connection with the management and investment of the Health and Welfare Trust Fund.  All accounts, books and records of the Corporate Trustee relating to the Health and Welfare Trust Fund shall be open at all reasonable times to the inspection and audit by any person or persons designate d by the Health and Welfare Plan Trustees or any one of them.

(iii)    **The Corporate Trustee, at the direction of the Health and Welfare Plan Trustees, shall submit to the auditors designated by the Health and Welfare Plan Trustees and to the actuary selected by the Health and Welfare Plan Trustees for consultations with respect to the Health and Welfare Plan such valuations, reports and other information as they may reasonably require.**

(iv)    The Corporate Trustee shall keep adequate books of account in which shall be entered a description of all property and assets from time to time constituting this Trust Fund and an account of all receipts and disbursements hereunder, which books of account shall at all times be open to the inspection and examination of the Trustees and shall furnish the Trustees at least annually and as often as may reasonably be requested an accurate statement showing the property and assets constituting this Trust

8

Fund, all income, receipts and disbursements. The Corporate Trustee shall not be required to file any account in or report to any Court under or pursuant to any statute now in force or hereafter enacted, nor shall it be required to account or report otherwise than as herein provided or as required by the order and decree of a Court of competent jurisdiction.

\*　　\*　　\*

6.　　<u>Exoneration and Indemnity</u>.  The Corporate Trustee will not be liable for any act or thing done or omitted to be done pursuant to the directions or with approval or ratification of the Board of Trustees.  The Corporate Trustee shall not be liable for any act or thing done or omitted to be done in good faith.  It shall be indemnified from this Trust Fund for all costs, charges, expenses and outlays which it incurs or pays or for which it may become personally liable or required personally to pay on account of any act or thing done or omitted to be done in good faith.

Trust Agreement Art. III [Ex. 1] (emphasis added).  Article IV of the Trust Agreement provides in relevant part:

2.　　<u>Investment Decisions</u>.  **The Investment Manager shall direct the investment of funds held by the Corporate Trustee hereunder.  In determining the investments to be made, the Investment Manager shall be required by the Agreement with it to act with care, skill, prudence and diligence that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.  The Corporate Trustee may rely upon the investment decisions made by the Investment Manager from time to time.**

3.　　<u>Directions from Investment Manager</u>.  **When directions are received by the Corporate Trustee from the Investment Manager, it shall promptly take all actions necessary or proper to be taken in connection with the directions given by the Investment Manager.**

Trust Agreement Art IV [Ex. 1] (emphasis added). Simply put, the Trust Agreement required Key, as corporate trustee, to follow the investment directions of Victory, acting as investment manager.

D.　　**The Investment Advisor's Agreement**

The Investment Management Agreement, which directs the investment of the Plan's assets, provides that Victory as the investment manager, rather than Key as the trustee,

9

determines and directs the investment of the Plan's assets. Complaint ¶ 25 & Ex. A (referencing

Investment Management Agreement). The Investment Management Agreement provides in

relevant part:

> 4.  Toledo Trust [initial investment manager] acknowledges that it has received and reviewed the Investment Policy Statement adopted by the Trustees, a copy of which is attached to this Agreement and by this reference incorporated herein as fully as if written out herein.  Toledo Trust agrees to exercise its authority as Investment Manager of the Plan and Trust in accordance with the Investment Policy Statement as attached or as hereafter amended by the Trustees and communicated to Toledo Trust.

> 5.  **Toledo Trust, as Investment Manager, is empowered with the sole and exclusive power and authority (subject to the provisions of Paragraph 12 hereof) to manage all of the investment assets of the Plan and Trust, including the power to acquire and dispose of said assets.**  Pursuant thereto, Toledo Trust agrees to do all things customary, necessary and proper to perform the services as exclusive investment advisor and manager to the Trustees. Toledo Trust shall have full discretion and authority, without obtaining any prior approval, as the agent and attorney-in-fact of the Trustees and at the expense of the Trustees:

>> (a)  **To make all investment decisions in respect to the Plan and Trust;**

>> (b)  To buy, sell and otherwise trade in bonds and other securities in respect to the Plan and Trust;

>> (c)  To place orders with respect to, and to arrange for, any of the foregoing; and

>> (d)  In furtherance of the foregoing, to do anything which Toledo Trust shall deem requisite, appropriate and advisable in connection therewith.

> Without limiting the generality of the foregoing, Toledo Trust is authorized and empowered as Investment Manager:

>> (a)  To receive and hold all contributions made to it by the Trustees or their custodian in accordance with this Agreement;

>> (b)  **To invest the contributions as received by it in any form of security, the purchase of which is consistent with the Investment Policy Statement (the "Statement") which is attached to this Agreement;**

(c)     To purchase and sell securities in the name of the Plan or the Trust established thereunder;

(d)     To arrange for delivery of and payment for any such securities purchased and sold for the account of the Plan and Trust;

(e)     To issue instructions to brokers, dealers, investment bankers and underwriters to purchase, sell or otherwise trade in or deal with the securities in the Plan and Trust;

(f)     To instruct the Custodian to deliver securities sold, exchanged or otherwise disposed of from the Fund and to pay cash for securities delivered to the custodian of the Plan and Trust;

(g)     To accept, act and fully rely upon the Statement and all instructions herein contained or referred to and all other written instructions given by the Trustees and received by the Investment Manager.  The Trustees agree that the Investment Manager shall be fully protected and indemnified in acting upon the Statement and such instructions.  Unless they expressly provide otherwise, all instructions shall be deemed to be continuing instructions effective and in full force until revoked or amended by subsequent instructions;

(h)     The Investment Manager shall further pay or deliver to the Trustees, upon their written instructions and receipt, any and all cash or securities held by the Investment Manager under this Agreement subject to reduction for any expenses or liabilities then outstanding and unpaid;

(i)     Furnish statements of assets to the Trustees;

(j)     Furnish statements of cash receipts and disbursements to the Trustees quarterly from the date hereof;

(k)     Provide the Trustees' Administrative Manager with that information which the Administrative Manager reasonably requires to prepare the reports required under any Federal, State or Local statute, law, ordinance or regulation governing Employee Benefit Plans and Trusts;

(l)     Provide the Trustees' attorney with that information which the attorney may reasonably require to advise and/or opine to the Trustees that they are in compliance with all legal obligations as Trustees;

11

  (m)  Provide the Trustees' qualified public accountant with such information as required for the preparation of financial statements, tax returns and other reports;

  (n)  Vote any securities and exercise any right appurtenant to any securities or property held hereunder, either in person or by general or limited proxy or power of attorney;

  (o)  To do such other and further acts as are reasonably requested by the Trustees and/or are necessary and proper for the Investment Manager to accomplish the purposes of this Agreement.

*  *  *

  12.  So long as Toledo Trust acts in accordance with the provisions of this Agreement, and except insofar as Toledo Trust shall fail to comply with a legal requirement, Toledo Trust shall not be liable for any loss, damage or expense relating in any way to its advice in respect to the Plan and Trust or otherwise arising out of any transactions made by Toledo Trust in respect to the Plan and Trust, and the Trustees shall hold Toledo Trust harmless and indemnify it against any and all liability in connection therewith.

*  *  *

  17.  Any disputes arising under the terms of this Agreement which cannot be resolved by the parties shall be resolved in accordance with the rules of the American Arbitration Association.

Investment Management Agreement [Ex. 2] (emphasis added). Simply put, under the terms of

the Investment Management Agreement, which incorporates by reference the Board's

Investment Policy Statement, Victory as the investment manager, rather than Key as the trustee,

has the duty to direct the investments that the Board is challenging in the Complaint.

  **E.**  **The Board's Investment Policy**

  In 1998, updating its prior 1978 statement, the Board adopted the Restated Investment

Policy Statement to set general investment policies for the Plan. Complaint ¶ 26 & Ex. B.[7] The

Investment Policy Statement initially authorized investment in the "Intermediate-Long-Term

---

[7] During the past twenty years, the Board has amended Investment Policy Statement on several occasions, including in February 2008 to permit investment of Plan assets in equities.

Investment Account" or the "ILTIF Account," which is intended to be the balance of invested

reserves in excess of the greater of $2,000,000 or three months' operating expenses, as follows:

> The ILTIF Account shall be individually invested exclusively in
> marketable debt obligations issued by (1) the United States Government or an
> agency of the United States Government, (2) domestic corporations (including
> industrial firms and utilities), and (3) domestic banks and other financial
> institutions of the United States; and commingled, pooled money market and
> similar funds meeting the objectives of this Investment Policy Statement.

Investment Policy Statement IV.B.1 (Complaint Ex. B).  The Board further stated as to the

"Style of Management":

> The ILTIF Account shall be managed by a dynamic and flexible manner. No
> limitations are suggested as to turnover. Sector, maturity and arbitrage swapping
> are permissible, provided, however, that the above quality and maturity
> constraints are maintained. The ILTIF Account shall be invested with a total
> return orientation.  Achievement of maximum return is <u>not</u> a primary requirement.

*Id*. IV.B.4. While arbitrage swapping and other derivatives were permitted,

> The Trustees have determined that the use of derivatives in a portfolio should be
> controlled.  The use of derivative or structured fixed income investments is
> limited to only those whose risk characteristics are in keeping with the objections
> of the plan [sic].  Those with excessive volatility, lack of marketability or other
> risks not appropriate to the Plan's objectives of consistent growth with low
> volatility should be avoided.

*Id*. IV.B.10.  In detailing the quality of the investments, the Investment Policy Statement

provided:

> Exclusive of United States Government and agency issues, all other issues shall
> be limited to A or better quality, as established by a recognized rating service and
> further reinforced by independent in-house credit analysis.  The average quality of
> the portfolio (where Aaa equals 4.0) shall be 3.5 (Aa) or higher (assume United
> States Government and "Full Faith and Credit Agencies equal 4.5). Provided,
> however, up to 10% of fixed income investments valued at market, may be
> invested in Baa or BBB bonds; all other bonds at time of purchase must be no less
> than single-A quality.  In the event of a split rating, the lower rating will govern.
> Bonds which fall below investment-grade quality subsequent to their purchase
> must be sold immediately. Bonds which are downgraded to Baa or BBB by any
> rating agency may continue to be held at the discretion of the manager, provided
> the 10% maximum limitation stipulated above is not exceeded.

*Id*. IV.B.2. The Complaint does not allege that this quality constraint was violated.

F.      **Victory's Investment of a Limited Portion of the Plan's Assets in Mortgage-Backed Securities**

Continuing a long-term use of mortgage-backed securities as a limited part of the investment strategy for the Plan's assets, Victory invested slightly more than $2 million dollars of the Plan's assets in mortgage-backed securities and collateralized mortgage obligations in 2006 and 2007. Complaint ¶¶ 52-53 & Ex. C.

IV.  **Analysis**

A.      **The Complaint Fails to Allege Facts That Support a Plausible Claim for Relief As to Key**

Key has some difficulty in addressing the allegations as to it because there are no specific allegations that address Key's role as the Plan's directed trustee.  No allegations exist that Key had a duty under the Trust Agreement to investigate or challenge investment directives that it received.  *See* Complaint. Indeed, the Board could make no such allegations consistent with Federal Rule of Civil Procedure 11 inasmuch as the Trust Agreement provides that Key "shall not be obligated or required and shall have no right, power or authority to inquire into the correctness of any such instructions. . . ." Trust Agreement Art. II [Ex. 1].  *See also id.* Art. III.3(b) ("any investment made at the direction of the Investment Manager shall be regarded as having been made in accordance with [requisite] standards of conduct.").

No less significantly, there is no allegation Key failed to meet a single duty imposed by the Trust Agreement. Indeed, the lack of specific allegations as to Key's alleged breach of its fiduciary duty as a trustee renders the Complaint subject to dismissal under the Supreme Court's standards in *Twombly*. As the Sixth Circuit has held, "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 167 L. Ed.

2d 929 (2007)." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008). In this case, however, the Board's Complaint alleges only conclusory allegations as to Key, rather than the factual allegations necessary to support a plausible claim for relief.  On this ground, this Court should dismiss the Complaint as to Key.

### B.     The Complaint Does Not State a Plausible Claim Against Key As a Directed Trustee

Key, as a directed trustee, did not breach any fiduciary duty owed to the Plan or to Plaintiff. As district courts in this circuit have recognized, "where a bank acted as a directed trustee of an employee stock ownership plan, . . . the bank had no fiduciary duty under ERISA to investigate the merits of any directives given to it by the plan's administrative committee, in part because it did not have discretion or authority to control those aspects of the plan." *Schornhorst v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 8781, [*18]-[*19] (E.D. Mich. 2009) (*citing Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998)). *See also Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 21 (1st Cir. 1998); *In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d 1002, 1038-39 (S.D. Ohio 2006).

Key's status as a "directed trustee" is established by the Trust Agreement. *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 19-21 (1st Cir. 1998) ("The starting point for a reasoned analysis of the Bank's fiduciary status is the Agreement."); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) ("The discretionary authority or responsibility which is pivotal to the statutory definition of 'fiduciary' is allocated by the plan documents themselves."). In light of the limits on Key's authority to investigate or challenge investment directives established by the Trust Agreement, Key was a directed trustee that "had no fiduciary duty under ERISA to investigate the merits of any directives given to it by the plan's administrative committee [or by the investment manager], in part because it did not have discretion to control

those aspects of the plan." *Schornhorst v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 8781, [*18]-[*19] (E.D. Mich. 2009) (*citing Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998)).

Under ERISA, although Key is required only to adhere to the "proper directions" of the named fiduciary, 29 U.S.C. § 1103(a)(1), as a directed trustee, Key "cannot be held liable for following the investment instructions provided by a plan's named fiduciaries." *Wright v. Oremet*, 360 F.3d 1090, 1102 (9th Cir. 2004). *See also In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d 1002, 1038-39 (S.D. Ohio 2006) (investment directions are "proper" where provided by named fiduciary); *Difelice v. US Airways, Inc.*, 397 F. Supp. 2d 735, 747 (E.D. Va. 2006) ("Congress, by requiring directions to be 'proper,' intended only to require that a direction from a named fiduciary conform to certain formalities that identify a direction as valid or genuine").

The gravamen of the Complaint is that the Plan should be able to recover losses allegedly caused by the investment manager's directives to invest plan assets in mortgage-backed securities and collateralized mortgage obligations in purported violation of the Board's Investment Policy Statement incorporated in the Investment Management Agreement. *See* Complaint. Where, as here, "the plan provides that an investment manager has the authority to control plan assets, then the trustee is not liable for losses caused by the investment manager." *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997). Under ERISA and controlling case law, Key as the directed trustee cannot be liable for any losses alleged to have been caused by the investment manager.

Based on the allegations in the Complaint and the applicable law,[8] this Court must dismiss the Complaint as to Key because Key is not alleged to have breached any duty imposed on it by the Trust Agreement or ERISA. *See, e.g., Wright v. Oremet*, 360 F.3d 1090, 1102 (9th

---

[8] The allegations ignore that the Board's Investment Policy Statement authorized such investments so that no claim for relief exists. *Laborers Nat'l Pension Fund v. Northern Trust of Quantitative Analysts, Inc.*, 173 F.3d 313 (5th Cir. 1999).

Cir. 2004) (affirming dismissal of Key as directed trustee); *In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d 1002 (S.D. Ohio 2006) (dismissing Putnam as directed trustee); *Difelice v. US Airways, Inc.*, 397 F. Supp. 2d 735, 747 (E.D. Va. 2006) (dismissing Fidelity as directed trustee), *aff'd*, 497 F.3d 410 (4th Cir. 2007); *In re GM ERISA Litig.*, 37 Employee Benefits Cas. (BNA) 1951 (E.D. Mich. 2006) (dismissing State Street as directed trustee). *See also Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998) (affirming judgment on the pleadings in favor of directed trustee).

    **C.**     **To the Extent the Complaint Asserts a Claim Against Key for Breach of the Investment Policy Statement Incorporated in the Investment Management Agreement, This Court Should Dismiss or Stay the Claim Pending Arbitration**

For the reasons set forth in Victory's motion filed this date, this Court should dismiss or stay the Complaint as to Key pending arbitration to the extent that the Board contends that the Complaint alleges that Key breached the Investment Policy Statement that is incorporated in the Investment Management Agreement.

**V.**     **Conclusion**

For the foregoing reasons, this Court should dismiss the Complaint as to Key.

Respectfully submitted,

/s/Jack F. Fuchs
Jack F. Fuchs (0014197)
THOMPSON HINE LLP
312 Walnut Street
Suite 1400
Cincinnati, Ohio 45202
(513) 352-6700 (P)
(513) 241-4771 (F)
Jack.Fuchs@ThompsonHine.com

OF COUNSEL:

Brian L. Gaj (0029439)
Robert A. West, Jr. (0078379)
Thompson Hine LLP
3900 Victory Center, 127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-0550

Eric S. Clark (0071035)
Thompson Hine LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
(513) 352-6700

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on counsel for Plaintiff via Electronic Filing, which electronically transmits service of this document to Plaintiff's counsel, this 30th day of March, 2009.

/s/ Jack F. Fuchs