**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
****

| | |
|---|---|
| **UNION CONSTRUCTION WORKERS HEALTH PLAN BOARD OF TRUSTEES** | ) Case No.: 3:09-cv-00467 |
| | ) |
| | ) Judge James G. Carr |
| Plaintiff, | ) |
| | ) **PLAINTIFF'S CONSOLIDATED OPPOSITION** |
| v. | ) **TO DEFENDANTS' MOTIONS TO DISMISS OR** |
| | ) **COMPEL ARBITRATION** |
| **KEYBANK NATIONAL ASSOCIATION, et al.** | ) |
| | ) David W. Zoll (0008548) |
| Defendants. | ) Wesley D. Merillat (0080253) |
| | ) **ZOLL KRANZ & BORGESS, LLC** |
| | ) 6620 W. Central Ave. |
| | ) Suite 200 |
| | ) Toledo, OH 43617 |
| | ) Phone: (419) 841-9623 |
| | ) Fax:  (419) 841-9719 |
| _____ | ) Email: david@toledolaw.com |
| | ) wes@toledolaw.com |

NOW COMES the plaintiff Union Construction Worker's Health Plan Board of Trustees and herein consolidates its opposition to Defendant Key Bank's Motion to Dismiss the Complaint, or in Alternative to Stay Pending Arbitration, and to Defendant Victory Capital Management's Motion to Dismiss the Complaint, or in the Alterative to Compel Arbitration and Stay the Action Pending Arbitration. For its consolidated opposition, Plaintiff states as follows:

1

**I.     STATEMENT OF THE CASE**

This case involves claims of breaches of fiduciary duty under the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").  The breaches of fiduciary duty relate to the Union Construction Worker's Health Plan ("Plan"), to which Defendant KeyBank and Defendant Victory were co-fiduciaries.

The purpose of the Plan is to accumulate savings to allow the Plan to provide for hospital, medical, surgical, death, income disability, and related welfare benefits.

Defendant Key Bank, as Plan Trustee, implemented investment decisions made by Defendant Victory and purchased residential mortgage backed securities that were not backed by any government agencies and did not represent corporate debt, in plain violation of the Plaintiffs' written policy guidelines.

The policy guidelines were acknowledged and accepted by the Defendants.  Defendants now seek to avoid litigation of these claims in this Court by invoking an arbitration clause contained in a separate agreement to which neither is a signatory.

In 1978, the Plan's Board of Trustees entered into an Agreement for Appointment of Investment Manager ("Investment Manager Agreement") with Toledo Trust Company appointed as Investment Manager.

Defendants have filed motions seeking to compel arbitration pursuant to that Investment Manager Agreement executed by and between the Board and Toledo Trust Company. Specifically, Defendants argue that the Investment Manager Agreement requires Plaintiff to arbitrate, rather than litigate, all claims bought against them.

Defendants are effectively asking the Court to enforce a contract that neither accepted. Having no choice but to acknowledge as much, Defendants suggest that Toledo Trust served as

2

Defendants' predecessor-in-interest to the arbitration provision.   However, the record is absolutely void of any facts supporting this legal conclusion.

Defendant KeyBank also presents an argument to the Court that it had no fiduciary responsibility to the Plan. However, KeyBank's proposition is broadly and mistakenly stated. First, this fact is directly contrary to KeyBank's acknowledgment to the Board that it in fact was a fiduciary to the Plan.  See Compl. Ex. A.  Second, ERISA and the case law interpreting it clearly charge a directed trustee, like KeyBank, with the fiduciary responsibility of insuring that investment directions given to it are in compliance with the Plan documents.  KeyBank seeks to avoid this obligation by confusing its own duty to make sure the investment manager's investment directions are "proper," with the investment manager duty to insure its investment directions are both "proper" and "prudent."

There simply is no basis for dismissal in this case and each of Defendants' Motions to Dismiss should be denied.

## II.    ARGUMENT

### A.    STANDARD OF REVIEW

The court should not dismiss a complaint "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kennedy v. United Healthcare of Ohio, Inc.,* 186 F.R.D. 364, 366 (S.D. Ohio 1999).  Therefore, the court must determine whether plaintiff is entitled to offer evidence to support the claims, "not whether the claim will succeed on its merits."  *U.S. v. Pretty Prods., Inc.,* 780 F.Supp. 1488, 1493 (S.D. Ohio 1991).

In determining whether there exist facts to support the complaint, the court must accept as true all factual allegations.  Kennedy, 186 F.R.D. at 366.  On a motion brought under Fed. R.

Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808 (3rd Cir.1990).

### B.     KEYBANK AND VICTORY HAVE NO STANDING TO MOVE FOR ARBITRATION UNDER THE ARBITRATION PROVISION CONTAINED IN THE "AGREEMENT FOR APPOINTMENT OF INVESTMENT MANAGER."

"Arbitration is a matter of contract." *Union twp. V. Union Twp. Prof'l Firefighters' Local 342*, 756 N.E.2d 204, 2008 (Ohio Ct. App. 2001).   "[A]rbitrators derive authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *Academy of Med. of Cincinnati v. Aetna health, Inc.*, 842 N.E.2d 488, 491 (Ohio 2006). Therefore, unless a party has contractually agreed to arbitrate, he cannot be compelled to do so. See *Henderson v. Lawyer's title Ins. Corp.,* 843 NE.2d 152, 159 (Ohio 2006).

To force the Board to arbitrate with KeyBank and/or Victory, this Court must determine that a valid agreement exists in which the Board expressly agreed to arbitrate disputes with either or both Defendants. See *Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003). However, no such agreement exists.

### 1.  KeyBank and Victory are neither signatories to, nor successors-in-interest of, the Agreement for Appointment of Investment Manager.

Where there is a question as to whether a party has agreed to an arbitration clause, there is a presumption against arbitration. *Spalsbury v. Hunter Realty, Inc*., et al (Nov. 30, 2000), Cuyahoga App. No. 76874, citing, *Council of Smaller Enters. v. Gates, McDonald & Co*. (1997), 80 Ohio St. 3d 661. An arbitration agreement will not be enforced if the parties did not agree to the clause.  *Harmon v. Phillip Morris Inc.* (1997), 120 Ohio App.3d 187, 189.

4

The issue of whether or not a party has agreed to arbitrate is determined on the basis of ordinary contract principles. *Kegg v. Mansfield* (Jan. 31 2000), Stark App. N. 1999 CA 00167, citing *Fox v. Merrill Lynch & Co*., Inc. 1978, 453 F.Supp. 561.   In order to have a valid contract, there must be a "meeting of the minds" on the essential terms of the agreement, which is usually demonstrated by an offer, acceptance, and consideration. *Reedy v. The Cincinnati Bengals, Inc.* (2001), 143 Ohio App.3d 516, 521.

A review of the Agreement for Appointment of Investment Manager ("Agreement") unequivocally shows that neither KeyBank, nor Victory, are signatories to the Agreement. The arbitration provision of the Agreement is between the Board and the Toledo Trust Company. There is simply no privity between either of the Defendants and the Board regarding the Agreement.

Defendants' casually suggest the arbitration agreement is applicable due to the fact that Defendants are "successors-in-interest" to the Agreement.  However, there is simply no evidence presented that establishes that either of the Defendants are bona fide successors-in-interest to the Agreement.[1]  Nor do any of the claims which Plaintiff seeks to enforce flow from a breach of the Agreement containing the arbitration clause.  The claims against KeyBank, in particular, do not even arise from KeyBank's activities as Investment Manager.   Even if KeyBank could subsequently establish that it was a successor to Toledo Trust, the duties KeyBank owes do not arise from its fiduciary obligations as Plan Trustee. In no event should the arbitration clause be applicable to KeyBank as the Investment Manager Agreement only concerns the Investment Manager and those functions performed by the Investment Manager.  Any claim by KeyBank

---

[1]  There is nothing in the record to show that Victory is a successor to Toledo Trust.  At best, Victory may be a successor to a successor to a successor.  However, this, at a minimum, is question of fact which cannot be resolved without at least some discovery.

that it, as Directed Trustee, is able to compel arbitration pursuant to an arbitration clause in an

Investment Manager Agreement is misguided.

### C. KEYBANK VIOLATED ITS OBLIGATION UNDER 29 U.S.C. §1103(a)(1) ENTITLING PLAINTIFF TO BRING THIS BREACH OF FIDUCIARY DUTY SUIT AGAINST IT.

KeyBank seeks to avoid liability by arguing that it has no "fiduciary duty" under ERISA.

Specifically, KeyBank argues that it cannot be held liable for following the investment

instruction provided by Victory, its subsidiary. However, KeyBank both misunderstands the

obligations imposed upon it by 29 U.S.C. § 1103(a)(1) and the case law interpreting this

provision.

Under 29 U.S.C. § 1103(a)(1), it provides:

Except as provided in subsection (b) of this section, all assets of an employee benefit plan shall be held in trust by one or more trustees. Such trustee or trustees shall be either named in the trust instrument or in the plan instrument described in section 1102(a) of this title or appointed by a person who is a named fiduciary, and upon acceptance of being named or appointed, the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that--
  (1) the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, <u>in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this chapter</u>.

(emphasis added)

In its Motion to Dismiss, KeyBank seems to have supplanted the term "prudent" for the

term "proper" in its argument that it has no fiduciary duty under ERISA to investigate the merits

of any directives given to it".  However, the case law cited by KeyBank brings clarity to the

distinction.

In *Dilfelice v. U.S. Airways, Inc.,* 397 F. Supp.2d 735, 748 (E.D. Va. 2006), the court

considered whether § 1103(a)(1)  should be read as imposing on directed trustees an implicit

duty of ordinary care and prudence to second guess the *wisdom* of the named fiduciary's directions as to Plan investment options.   The court held that properly read, § 1103(a)(1) includes no such implicit duty of prudence.   However, critical to the court's holding was its consideration of the word "proper" as used in § 1103.   The court articulated the following rule: If the directed trustee follows the 'proper' directions of the named fiduciary and if those directions are 'in accordance with the terms of the plan' or 'not contrary to' ERISA under §1103(a)(1), the directed trustee is not liable for a co-fiduciary's breaches.   Id. at 757, citing to *In re Enron Corp. Securities, Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 585-86 (S.D.Tex.2003).

The *Dilfelice* Court specifically stated that where a named fiduciary directs a trustee to invest in an investment that would be contrary to the Plan, the directed trustee cannot follow this direction without exposing itself to liability for doing so. Id at 749.

This same rationale was applied in *Afridi v. National City Bank, et al*., Case No. 03-cv-07663, Dkt. 154, August 28, 2007 Opinion and J.E. on cross-dispositive motions, attached (statement). In *Afridi*, the trial court held that "Defendant's [bank acting as directed trustee] duty regarding the propriety of these transactions is not extinguished by Plaintiff's appointment of Davis as his investment advisor." Id. at p. 12. The "directed trustee, still owed certain fiduciary responsibilities to Plaintiff." Id. Insulation from liability for a directed trustee exists only where the directions followed were proper, in keeping with the terms of the plan, and not contrary to ERISA. Id. at 12.

Here, KeyBank's liability in this action does not stem from it failing to question the prudence or wisdom of the Investment Manager, but rather for investing in investments that were improper under the Plan documents. Stated another way, Victory could have directed KeyBank

to invest in imprudent investments and KeyBank could have done so without subjecting itself to liability, so long as the investment were in accordance with the Plan. However, where, as here, KeyBank is directed to invest in investments that are improper under the Plan and KeyBank does, KeyBank breaches its fiduciary duty and is liable.

The same basic argument that KeyBank proffers was recently rejected by the United States Supreme Court in the case of *LaRue v. DeWolff, et al.,* 128 S. Ct. 1020 (2008). See also *Tullis, et al. v. UMB Bank,* 515 F.3d 673 (6th Cir. 2008).

In *LaRue* the Court made it clear that directed trustees have fiduciary liability if they fail to act in accordance with the plan documents, guidelines, or instructions. See also *Williams v. Provident Inv. Counsel, Inc.* 279 F.Supp.2d 894, 904 (N.D. Ohio, 2003) (Under ERISA 29 U.S.C. § 1105(a), a fiduciary may be liable for a breach of fiduciary responsibility of another fiduciary.) Therefore, as in *LaRue*, KeyBank can be held liable if, as alleged, it accepted instructions which were contrary to the acknowledged investment policy. Implementation of improper instructions can amount to a breach of fiduciary duty, and where that misconduct results in harm to the plan, then a remedy lies under ERISA.

## IV.    CONCLUSION

Plaintiff can only be compelled to arbitrate this dispute if it clearly and expressly contracted to do so.  Because neither of the Defendants are a signatory to the Investment Manager Agreement, nor accepted the agreement, containing the arbitration clause they seek to enforce, they lack standing to enforce the provision and their motion to compel should be denied.

Furthermore, Defendant KeyBank has liability as a directed trustee for making investments that are improper under the Plan documents. Its Motion to Dismiss should be denied.

**WHEREFORE**, the Plaintiff respectfully prays that this Honorable Court deny  both Key Bank's Motion to Dismiss the Complaint, or in Alternative to Stay Pending Arbitration, and Defendant Victory Capital Management's Motion to Dismiss the Complaint, or in the Alterative to Compel Arbitration and Stay the Action Pending Arbitration.  Should the Court agree with Defendant KeyBank's assertion that Plaintiff has failed to set forth a specific claim against it in the Complaint, Plaintiff requests the Court grant it leave to amend the Complaint before ruling on Defendant's 12(b)6) motion.

Respectfully submitted,

**ZOLL KRANZ & BORGESS, LLC,**

 /S/ David W. Zoll
David W. Zoll (0008548)
Wesley D. Merillat (0080253)
6620 W. Central Ave. Suite 200
Toledo, OH 43617
Phone: (419) 841-9623
Fax:    (419) 841-9719
Email:  david@toledolaw.com
        wes@toledolaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of May 2009, a copy of the foregoing was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ David W. Zoll
David W. Zoll (0008548)
Zoll, Kranz & Borgess, LLC
*Counsel for Plaintiff*